IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RAYMO LEONARD,                        )
                                      )
         Plaintiff,                   )
                                      )
vs.                                   )      CIVIL ACTION NO. 1:18-0312-KD-MU
                                      )
CYNTHIA STEWART, *et al.*,            )
                                      )
         Defendants.                  )

### REPORT AND RECOMMENDATION

Plaintiff Raymo Leonard, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R).  This matter is before the Court on Defendants' motion for summary judgment.[1]  (Doc. 38).  For the reasons discussed herein, it is recommended that this motion be GRANTED.

### I.    BACKGROUND AND FACTUAL ALLEGATIONS[2]

### A.    Amended Complaint.

Plaintiff is suing Alabama Department of Corrections Commissioner Jefferson Dunn and Warden Cynthia Stewart for cruel and unusual punishment for their failure to

---

[1]      The Court converted the Defendants' Answers and Special Reports to a motion for summary judgment.  (Docs. 34, 35).

[2]      The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riveria Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

protect him from an inmate attack at Holman Correctional Facility ("Holman") on June 20, 2018.[3]

In his complaint, Plaintiff alleges that just after midnight, while housed in A-Dorm, he left his bed and walked to the front of the dorm to get ice. According to Plaintiff, there was no officer stationed at the post inside the dorm. There were, however, three inmates sitting at the front of the dorm (beside the unattended guard station). Plaintiff claims that one of the inmates got up from the table and came to him asking for a cigarette, to which Plaintiff replied, "I don't smoke". (Doc. 1 at 4). The inmate returned to the table with the other two inmates who were smoking a drug. Plaintiff got ice and, as he returned to his bed, Plaintiff was approached by the inmate whom he denied a cigarette. The inmate accused Plaintiff of "getting smart" with him, to which Plaintiff replied, "Man you tripping" (*Id*. at 5). As Plaintiff continued to his bed area. he was stabbed by the three inmates. (*Id*. at 4, 5). Plaintiff alleges that someone yelled that an officer was coming, so the three inmate attackers stopped their assault and departed. Plaintiff claims the officer never entered the dorm or radioed for assistance, but instead stood in the doorway and asked what was going on. Plaintiff claims he was covered in blood and walked to the doorway; however, Plaintiff claims the officer standing in the doorway offered no assistance and Plaintiff walked to the main hall where Sergeant Lance Pace escorted him to the health care unit.

---

[3]    In his complaint, Plaintiff alleges that the inmate assault occurred on June 18, 2018. (*See* Doc. 1 at 4). However, Defendants contend, and all submitted documents (including incident reports and medical records) support, that the attack occurred in the early morning hours of June 20, 2018. The Court will reference June 20, 2018 throughout this report as the date of incident.

Plaintiff suffered six stab wounds and was taken offsite by ambulance and then air lifted to a hospital in Mobile, Alabama, where he received treatment for the wounds. Plaintiff claims when he returned to Holman from the hospital, he was placed in the segregation unit in a cell without working lights, with semen on the door and walls, and toilet water on the floor.[4]

Plaintiff brings this suit alleging that Defendants were aware of the staff shortage at Holman and failed to provide adequate security and protection for Plaintiff which resulted in him being stabbed.  Plaintiff claims "Defendants knew of the dangers of crowding, staff shortage, and gang active[sic] more than a year when they ordered guards to wear protective vest[s]." (Doc. 8 at 2).  Plaintiff also alleges that Holman averages over 5 ½ stabbings a month since June 2018 and that inmates are caried to the health care unit (daily) for drug overdoses, yet no reasonable, viable plan for safety has been implemented.  (Doc. 8 at 2).  In support of his allegations, Plaintiff submitted a self-composed list of "violent acts" occurring at Holman from June to October 2018.  Plaintiff

---

[4]      Plaintiff has not asserted a claim regarding the constitutionality of his cell conditions.  To the extent his pleaded facts could be interpreted as such, his claim fails. Prison conditions constitute cruel and unusual punishment only when they result in the "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).  To establish a claim, Plaintiff must establish that he was deprived of "the minimal civilized measure of life's necessities," *id.* at 347, or of a "single human need[.]" *Wilson v. Seiter*, 501 U.S. 294, 305, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 270 (1991).   He must then show Defendants "wantonly permitted the constitutionally infirm condition to persist" while knowingly or recklessly disregard[ing] [his] basic needs." *LaMarca v. Turner*, 995 F.2d 1526,1535 (11th Cir. 1993). The third prong "requires proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." *Id.* at 1583 (quoting *Williams v. Bennett*, 689 F,2d 1370, 1380 (11th Cir. 1982)).  Here, Plaintiff's pleadings are void of allegations that Defendants were subjectively aware of the conditions of which he complains, the duration of the conditions, or any harm suffered by the conditions.  Accordingly, Plaintiff's allegations are insufficient to support an Eighth Amendment violation regarding the conditions of his cell.

contends in his unsworn memorandum that in June 2018 - 7 incidents involving stabbings and 1 drug overdose occurred at Holman; in July 2018 - 2 stabbings and 2 assaults occurred, and "several" inmates were taken to the hospital for drug abuse; in August 2018 – 3 stabbing incidents and 4 drug overdoses occurred; in September 2018 - 5 inmate stabbings occurred; in October 2018 - 3 inmate stabbing incidents occurred.  (Doc. 8-1 at 1).  Plaintiff also cites to *Braggs v. Dunn*, 257 F.3d 1171, 1268 (M.D. Ala. 2017), for the proposition that Defendants are subjectively aware of a staff shortage, that they have had sufficient time to implement a viable plan, and that they have failed to remedy the deprivation.  (Doc. 8-1 at 1, 2).

Plaintiff requests monetary damages in the amount of $50,000.00 from each defendant and a trial by jury.[5] (Doc. 1 at 9).

## B.   Defendants' Answers and Special Reports.

Defendants have answered the suit and denied the allegations asserted against them.  Defendants maintain that Plaintiff has failed to show that they were aware that Plaintiff would be stabbed and robbed in the early morning hours of June 20, 2018.  They further argue that the supervisory officials are not liable under the theory of *respondeat superior*.

In support of their denials, Defendants have submitted personal affidavits in response to the allegations asserted against them, which are summarized as follows:

Warden Cynthia Stewart avers that she was not present at Holman on June 20, 2018 at the time the incident occurred.  She avers that she is not responsible for the hiring process or the appointment to fill the position of correctional officers.  She further avers that the prison was adequately staffed on June 20, 2018, based on the post assignment

---

[5]     Plaintiff also requested three-judge court pursuant to 18 U.S.C.S. § 3626 (Doc. 8 at 2), which was denied by the Court.  (Doc. 11).  The Court, however, interpreted Plaintiff's request as a demand for a trial by jury.  (*Id.*).

log.  According to Warden Stewart, correctional officers have the responsibility to monitor the behavior of inmates and their activities and patrol areas of the prison.  (Doc. 35-3).

Commissioner Jefferson Dunn avers that he has no personal knowledge of the matters alleged in Plaintiff's complaint and has not received a grievance regarding the incident.  He further avers that he does not handle the day-to-day operations at Holman. (Doc. 35-1).

Defendants have also submitted the June 20, 2018 Incident Report (Doc. 35-5) which indicates that at approximately 12:20 AM, Officer Pickett observed Plaintiff standing at the Housing Unit A gate, bleeding from the waist and called for assistance via hand-held radio.  Six other officers responded to the call, and Officer Pace and Salter escorted Plaintiff to the health care unit.  Plaintiff sustained approximately six (6) puncture wounds and a laceration to the mid and lower back areas, and the medical staff determined Plaintiff should be transported to USA Medical Center for treatment.  The ambulance arrived at Holman at approximately 12:35 AM, and two officers escorted Plaintiff via ambulance to a secured location where he was airlifted to USA Medical Center.  Plaintiff was treated in the Emergency Room of USA Medical Center and held for one night.  "No crime scene was reported.  No weapon was recovered and there [were] no suspects" found.  (Doc. 35-5).  The incident report reflects that the assault was immediately reported to appropriate supervisors, including Warden Stewart, I&I Investigator Cooper, and Associate Commissioner Ellington.  Plaintiff returned to Holman on June 21, 2018 and was placed in the Restrictive Housing Unit.

Provided medical records evidence that Plaintiff was immediately assessed in the health care unit following the assault.  (Doc. 35-2 at 13; Doc. 35-7).  Plaintiff was promptly ambulanced and then life flighted to a hospital for wound care. (Doc. 35-2 at 9, 15). Plaintiff returned to Holman the next day, June 21, 2018.  (*Id*. at 11, 16).  Thereafter,

Plaintiff received proper follow-up care for his wounds, including medication, wound cleaning, and suture removal. (*Id*. at 2, 8)

The Post Assignment Roster shows that 22 officers were assigned to Holman's night shift at the time of the incident. (Doc. 35-9). The Duty Post Log reflects that at the time of the incident subject of this complaint, in the areas of concern for Plaintiff, Officer Boudreaux was assigned to Housing Unit A and Cubicles 1 and 2 were also manned. (Doc. 35-8 at 1). According to the Duty Post Log, Sergeant Pace escorted Plaintiff out of A-Dorm to the health care unit at approximately 12:20 AM. (Doc. 35-8 at 4). Officer Sims picked up a video recorder from Central at 12:25 AM. (*Id*.). Officer Hard, assisting officer Thompkins with transport of Plaintiff, picked up transport bag and van key 841 from Central at 12:27 AM. (*Id*.). The ambulance entered Holman prison gates at 12:35 AM. (*Id*.). From 12:39 AM to 1:00 AM, calls were made to supervisory officials. (*Id*. at 4-5). At 12:54 AM, Plaintiff left Holman via ambulance to be life flighted by helicopter to USA Medical Center. (*Id*. at 5). At 1:19 AM, Plaintiff was transported via helicopter with Officer Hard escorting and Officer Thompkins following in van 841. (*Id*.). At 2:31 AM, Officer Thompkins reported that Plaintiff had been placed in ER Room 8 at USA Medical Center and would remain there for one night. (*Id*.).

The Court converted Defendants' answers and special reports (Docs. 34, 35) into a motion for summary judgment. (Doc. 38).

**C.    Plaintiff's Response to Defendants' Motion for Summary Judgment.**

In response to Defendants' Motion for Summary Judgment, Plaintiff challenges the lack of video cameras at Holman (which he exclaims were not placed at the prison until after the date of his assault) and further takes issue with his security level classification.

(Doc. 45 at 1).  While Plaintiff makes no direct allegation, he appears to insinuate that the lack of security in Holman's general population is the reason for his restrictive housing unit classification, that is because the inmates that assaulted him have not been identified, he is being held in restrictive housing instead of general population.  (*Id*. at 1, 2).

## II.  MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (emphasis in original); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis in original) (citation omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing or pointing out to the district court that the

nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc*., 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted).

The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. *Garczynski*, 573 F.3d at 1165. "A genuine dispute requires more than 'some metaphysical doubt as to material facts.'" Id. (citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) ("In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such

that no reasonable jury could believe it—a court should not adopt the contradicted allegations.").

### III.   DISCUSSION AND ANALYSIS

#### A.   ELEVENTH AMENDMENT IMMUNITY.

To the extent Plaintiff attempts to sue Defendants in their official capacities (as the Alabama Department of Corrections Commissioner and correctional warden) and seeks any type of monetary award, the defendants are entitled to absolute immunity from suit, as official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Id*., quoting in large measure *Lancaster v. Monroe Cnty*, 116 F.3d 1419, 1429 (11th Cir. 1997). Accordingly, Defendants, both employed by the State of Alabama, are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429.

#### B.   QUALIFIED IMMUNITY.

Defendants contend that they are entitled to qualified immunity because Plaintiff cannot show a supervisory liability claim against Defendants Dunn and Stewart under the Eighth Amendment. (Doc. 34). "Qualified immunity protects government officials

performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Marbury v. Warden,* 936 F3d 1227, 1232 (11th Cir. 2019) (citation omitted).  Since there is no dispute that the defendants in this action were acting within their discretionary authority at all times when the acts in question occurred, the burden shifts to Plaintiff to show that Defendants violated a constitutional right and that the right was clearly established at the time of the alleged violation. *Id*. Therefore, the Court will now address whether this action identifies any constitutional violation.

### C.  EIGHTH AMENDMENT FAILURE TO PROTECT.

"The Eighth Amendment, applicable to the states through the Fourteenth Amendment, governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison." *Farrow v. West,* 320 F.3d 1235, 1242 (11th Cir. 2003); *see also Bass v. Perrin*, 170 F.3d 1312, 1316 (11th Cir. 1999).   The Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.  "'[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'"  *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (some internal quotation marks omitted).   "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'"  *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981).  Additionally, "[b]eyond just restraining prison officials from inflicting 'cruel and unusual punishments' upon inmates, '[t]he Amendment also imposes duties on these

officials, who must ... "take reasonable measures to guarantee the safety of the inmates."'" *Bowen v. Warden Baldwin State Prison,* 826 F.3d 1312, 1319-20 (11th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)).

Under the Eighth Amendment, prison officials have a duty to "ensure reasonable safety" of inmates, "a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer*, 511 U.S. at 844-845. However, "a prison custodian is not the guarantor of a prisoner's safety", *Purcell ex rel. Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (citation omitted), and "[i]t is not[] every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Prison officials must "take reasonable measures to guarantee the safety of the inmates", *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984), but there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." *Farmer*, 511 U.S. at 838. It is a defendant's deliberate indifference to a known, significant risk that violates the Eighth Amendment. *Lane v. Philbin*, 835 F. 3d 1302 (11th Cir. 2016).

To establish a § 1983 claim for deliberate indifference, Plaintiff must show (1) "that he is incarcerated under conditions posing a substantial risk of serious harm", *Farmer*, 511 U.S. at 534; (2) that the defendants' were deliberately indifferent to that risk, acting with a "sufficiently culpable state of mind", *id.;* and (3) causation. *Lane*, 835 F.3d at 1307. The first, objective, element requires the plaintiff to show "conditions that were extreme

and posed an unreasonable risk of serious injury to his future health or safety."  *Lane*, 835 F. 3d at 1307.  The second, subjective, element requires showing that the official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . also draw the inference." *Farmer*, 511 U.S. at 837.  Again, it is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key.  *See, e.g., Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed 2d 251 (1986).  "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted).  Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id.*

In the current action, Plaintiff brings suit against two supervisory defendants.  Plaintiff makes no claims against officers personally involved in the incident, nor are claims asserted related to his subsequent medical treatment.   Reading Plaintiff's complaint liberally, Plaintiff claims Defendants Dunn and Stewart acted with deliberate indifference to his safety by failing to hire officers, failing to properly secure the prison, and by failing to oversee the reasonable reduction of overcrowding, resulting in him being attacked in A-Dorm at Holman on June 20, 2018.   (Doc. 1 at 7; Docs. 8, 8-1).  Accordingly, Plaintiff asserts an Eight Amendment claim for a generalized risk of harm faced at Holman prison.

Turning to the first element of Plaintiff's claim, the Eleventh Circuit has declared many times over that a claim for a generalized risk of violence may only be established by showing "that serious inmate-on-inmate violence was the norm or something close to it" which is generally evidenced by "pervasive staffing and logistical issues rendering prison officials unable to address near-constant violence, tensions between different subsets of a prison population, and unique risks posed by individual prisoners or groups of prisoners due to characteristics like mental illness."  *Marbury* 936 F. 3d at 1234-35 (internal citations omitted).

In *Hale v. Tallapoosa County*, the Eleventh Circuit determined that a prisoner survived summary judgment that inmate-on-inmate violence created a substantial risk of serious harm by submitting evidence that prisoners were not segregated based on their proclivity for violence, there was only one jailer on duty, the jailer's quarters were out of earshot and eyesight of the prisoners' cell, and fights occurred between inmates on a regular basis resulting in injuries requiring medical attention and hospitalization.  50 F.3d 1579, 1581-84 (11th Cir. 1995).

In *Marsh v. Butler County, Ala.*, 268 F.3d 1014 (11th Cir. 2001) (en banc), the Eleventh Circuit held that the former inmate plaintiffs alleged sufficient facts to survive summary judgment when they claimed:

> 1) there was no segregation of nonviolent inmates from violent inmates, pretrial detainees from convicted criminals, juveniles from adults, or inmates with mental disorders from those without mental disorders, 2) at times the Jail housed more prisoners than the cells could accommodate, 3) the Jail was routinely understaffed, 4) no head counts of prisoners were made to make sure they were all accounted for, 5) locks on cell doors were not functional, allowing inmates to roam freely at all hours of the day, 6) homemade weapons were readily available by fashioning weapons from material torn from the dilapidated structure of the Jail, 7) no lock down of prisoners in their cells occurred at any point during the day or night, 8) cells

were not visually inspected, 9) no jailer was assigned to maintain prisoners' security on the second floor where most of the inmates were housed, 10) the Jail was not operated in accordance with written policies, 11) inmates were not screened for mental health, medical conditions or conflicts with other prisoners before entering the Jail, and 12) prisoners were not disciplined or segregated when they attempted to escape, threatened jailers, destroyed property or assaulted other inmates.

*Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1029 (11th Cir. 2001).  The Court reasoned that, "[t]aken as a whole, these alleged conditions, if true, present an objectively substantial risk of serious harm—including the risk of inmate-on-inmate attacks—to inmates. This risk violates the Eighth Amendment's requirement "that inmates be furnished with basic human needs, one of which is 'reasonable safety.'"  *Id*. (quoting *Helling v. McKinney,* 509 U.S. 25, 113 S. Ct. 2475, 2480–81, 125 L. Ed. 2d 22 (1993) (internal citation omitted).

The Eleventh Circuit has specified that *Hale* and *Marsh* are not the "proverbial 'floor' of liability for Eighth Amendment purposes" but that the conditions evidence by the records must be "sufficiently grave to violate the Constitution."  *Purcell ex rel. Estate of Morgan v. Toombs County, Ga*., 400 F. 3d 1313, 1323 (11th Cir. 2005) ("Whether a substantial risk of serious harm exists so that the [Constitution] might be violated involves a legal rule that takes form through its application to facts.").  The cases below evidence facts considered insufficient to establish that prison conditions "rose to the level of a 'substantial' or 'sufficiently serious' risk as opposed to some lesser risk of harm", given that "a risk of harm to some degree always exists by the nature of its being a jail."  *Id*. (internal citations omitted).

In *Purcell*, the Court determined that the inmates were segregated based on a number of particularized factors (including the type of crime committed and potential personal conflicts with other), the jail was properly staffed (with the typical number of 5

14

officers on duty), officials had a history of addressing and punishing inmate violence, the fights that occurred were not linked to any specific cause, and the guards testified they periodically walked the cellblock.  *Purcell*, 400 F.3d at 1322-23.

In *Harrison v. Culliver*, 746 F.3d 1288 (11th Cir. 2014), the plaintiff presented evidence of 33 incidents on inmate-on-inmate violence over the span of three and a half years, four of which occurred in the same hallway where the assault of the plaintiff occurred, in a prison which housed 800-900 inmates.  The Court concluded that the evidence presented was "hardly sufficient to demonstrate that [the institution] was a prison 'where violence and terror reign.'"  *Id*. at 1300.

In *Lorenzo v. Williams*, the plaintiff alleged an average of 6 inmate-on-inmate assaults per month occurred in the year he was attacked in a prison population of 1500-1600.  The district court "conclude[d] that these superficial statistics [were] insufficient to demonstrate a substantial risk of serious harm to inmates."  CV 616-011, 2018 WL 3863529, *7 (S.D. Ga. July 30, 2018).

In *Marbury v. Warden*, 936 F.3d 1227 (11th Cir. 2019), the plaintiff affirmed he personally witnessed 15 inmate stabbings prior to the incident in which he was stabbed, he wrote letters to the warden asking to be moved to another dorm (he described his dorm as an "over-rated gang affiliated block").  *Id*. at 1231.  The Court found the evidence insufficient to sustain an Eighth Amendment claim, expounding that where the court has found deliberate indifference to a substantial risk of serious harm, the plaintiff has "pointed to specific features of a facility or its population rendering it particularly violent" and Marbury failed to show a generalized risk of violence or alleged "specific features of the prison that would make it particularly violent."  *Id*. at 1235; *but cf*., *Dickinson v. Cochran*,

833 F. App'x 268, 275 (11th Cir. 2020) (The plaintiff alleged overcrowding, failure to identify and segregate violent inmates, failure to properly search inmates, failure to limit contraband, and failure to adequately supervise inmates to satisfy his burden of pleading "specific feature of the jail that render[ed] it particularly violent.").

Here, Plaintiff has put forth allegations of approximately 23 incidents of assaults which occurred at Holman over a five (5) month period. The cited incidents, however, are completely lacking in context or factual details; specifically, the enumerated incidents fail to provide the location within the prison where the attacks occurred, the time of the attacks, the inmate to staff ratios at the time of the incidents, or possible motives for the attacks. Taking Plaintiff's allegations as true, Plaintiff has failed to carry his burden of pleading "specific facts" to show that he was housed in a dormitory where "violence and terror reign". *Purcell.*, 400 F.3d at 1321. To the contrary, the record supports that there were 891 inmates at Holman on June 20, 2018, separated into general population dormitories, segregation and restrictive housing units, and a death row unit. (Doc. 35-8). The units were all manned by cubicle officers and rovers. Plaintiff's complaint further lacks allegations suggesting that prior to the attack there was a constant threat of violence or assaults in his dorm, A-Dorm. Contrarily, Plaintiff's complaint indicates the exact opposite. Plaintiff claims that he got up from his bed after midnight and walked to get ice from an ice chest; he states he was approached by an inmate for a cigarette; he maintains that he told the inmate he did not smoke and continued to get ice and then walked back toward his bed. Never does Plaintiff allege feeling threatened or afraid of being attacked in A-Dorm because of near constant assaults in his dormitory or the prison. Indeed, the current record lacks any evidence that assaults were common in A-Dorm, day or night. Moreover,

Plaintiff contends that he "looked around for A-Dorm Dorm Officer." (Doc. 1 at 5). Such allegation insinuates that an officer is usually present. Plaintiff then states, "After noticing that no officer was in the Dorm. I proceeded back to my assigned sleeping quarters." (*Id*.). Again, Plaintiff's allegation does not indicate that an officer's absence caused Plaintiff concern or incited fear due to violent conditions. Accordingly, Plaintiff's conclusory "assaults" listed by date only (void of any factual details), coupled with Plaintiff's allegations lacking even a suggestion of ongoing fear of violence at Holman, are simply insufficient to establish a substantial risk of serious harm and do not depict that inmate-on-inmate violence was so prevalent that "inmates were exposed to the constant threat of violence." *Oliver v. Harden*, 587 F. App'x 618, 620 (11th Cir. 2014). At best, Plaintiff suggests "the mere possibility" of injury but fails to carry his burden to establish the "strong likelihood of injury". *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).

Even assuming Plaintiff could establish a substantially serious risk of harm, he fails to show that Defendants acted with deliberate indifference to a serious risk of harm. As to Defendant Dunn, Plaintiff claims that, as the Commissioner of the Alabama Department of Corrections, he is aware of the shortage of staff at Holman and has neglected to provide the plaintiff with security and protection. (Doc. 1 at 7). Similarly, Plaintiff claims that Defendant Stewart is liable as Warden of Holman for failing to provide security and protection for the plaintiff and staff members.

> It is well established that overcrowding in prisons is not *per se* unconstitutional. *See Parrish v. Alabama Dep't. of Corr.*, 156 F.3d 1128, 1129 n.1 (11th Cir. 1998) (citing *Rhodes*, 425 U.S. at 347-48) (the fact that a prison is overcrowded does not establish an extreme deprivation prohibited by the Eighth Amendment unless it leads to unconstitutional conditions in the facility). "Similarly, there is nothing inherently wrong with having only a few staff members supervise inmates." *Laube v. Haley*, 234 F. Supp. 2d 1227, 1245 (M.D. Ala. 2002). Moreover, the Eleventh Circuit

has specifically stated that it is not enough for a plaintiff to state, " 'Well, they should have known,' " to show that a defendant had subjective awareness of a substantial risk of harm to him. *Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013) (finding that if the court accepted such theory of liability, the deliberate indifference standard would be "silently metamorphosed into a font of tort law – a brand of negligence redux – which the Supreme Court has made abundantly clear it is not"). "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as [a constitutional violation]." *Farmer*, 511 U.S. at 838.

*Adams v. Ivey*, No. 219CV01063LCBJHE, 2021 WL 711482, at *5 (N.D. Ala. Feb. 1, 2021),

*report and recommendation adopted*, No. 2:19-CV-1063-LCB-JHE, 2021 WL 690082

(N.D. Ala. Feb. 23, 2021)

The record indicates that neither Defendant Dunn nor Stewart was present at the

time of the incident.   And, Plaintiff has not alleged any facts suggesting that either

Defendant subjectively knew that the three inmates who attacked Plaintiff were a known

threat to his safety.   Therefore, to establish liability on the part of Defendants Dunn and

Stewart, Plaintiff must show that they had a causal connection linking their actions to the

alleged constitutional violation, *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988)

("Supervisory liability under section 1983 may be shown either by the supervisor's

personal participation in the acts that comprise the constitutional violation or the existence

of a causal connection linking the supervisor's actions with the violation."), which Plaintiff

fails to do here.

The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzalez*, __ F.3d at __, 2003 U.S. App. LEXIS 5762, 2003 WL 1481583, at *5 (quoting *Braddy v. Fla. Dept. of Labor & and Employment*, 133 F.3d 797, 802 (11th Cir. 1998)); *Brown*, 906 F.2d at 671. Alternatively, the causal connection may be established when a supervisor's "'custom or policy . . . result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from

18

doing so." *Gonzalez*, __ F.3d at __, 2003 U.S. App. LEXIS 5762, 2003 WL 1481583, at *5 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)); *Hartley*, 193 F.3d at 1263; *see also Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1560-61 (11th Cir. 1993).  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez*, __ F.3d at __, 2003 U.S. App. LEXIS 5762, 2003 WL 1481583, at *4 (internal quotation marks and citation omitted).

*Cottone v. Jenne*, 326 F.3d 1352, 1360-61 (11th Cir. 2003).

Plaintiff challenges overcrowding and staff shortages as the primary cause of violence at Holman and cites to *Braggs v. Dunn*, 257 F.Supp. 3d 1171 (M.D. Ala. 2017) for the proposition that Defendant Dunn was aware of the substantial risk of harm he faced in A-Dorm at Holman and acted with deliberate indifference to that risk.  (*See* Doc. 8 at 1; Doc. 8-1 at 2).  Plaintiff's evidence, however, is insufficient.  Namely, *Braggs* resolves Phase 2A of an Eighth Amendment claim of unconstitutional conditions and inadequate care for a group of seriously mental ill state prisoners incarcerated at Tutwiler Prison for Women and the work release centers.  *Bragg*, 257 F.Supp. 3d at 1181.  Thus, the facts contained within *Braggs* are irrelevant to Plaintiff's action and have no bearing on Defendant Dunn's notice as to conditions in A-Dorm at Holman.  Plaintiff has simply failed to show that Defendant Dunn recklessly or knowingly declined to take actions to improve alleged conditions.  *LaMarca v. Turner*, 995 F.2d 1526, 1537 (11th Cir. 1993) ("Mere knowledge of the infirm conditions persisting at GCI does not establish deliberate indifference.  The plaintiffs must also demonstrate that, with knowledge of the infirm conditions, Turner knowingly or recklessly decline to take actions that would have improved the conditions.).

Plaintiff alleges that Defendant Stewart, as head warden of Holman was aware of the violence at the prison, "yet [she] has not implemented a reasonable and viable plan

for safety." (Doc. 8 at 2). Turning to the record evidence, the Post Assignment Roster confirms that the prison was adequately staffed at the time of Plaintiff's assault.[6] (Doc. 35-9). Furthermore, as evidenced by the Incident report, six officers responded to the Cubicle 2 officer's call for assistance. (Doc. 35-5). This corresponds with Plaintiff's allegation that he walked past an officer at the doorway and met Sergeant Pace in the hallway and was escorted to the healthcare unit. (Doc. 1 at 5-6). Notably, the prison was staffed well enough that Plaintiff was able to immediately receive medical attention and promptly be transported to the hospital with two officers leaving the prison to escort him. These facts imply that a sufficient number of officers were on duty on June 20, 2018, when Plaintiff was attacked. Therefore, the record belies the claim that Defendant Stewart "neglected her duty as warden to provide security and protection for the Plaintiff." (Doc. 1 at 7). "[A] prison official will only violate the Eighth Amendment if the official's response to the conditions posing the substantial risk of serious harm is unreasonable." *Marsh v. Butler,* 268 F.3d at 1029. The evidence supports that Defendant Stewart did reasonably respond to the need for security and protection of inmates by adequately staffing Holman prison on June 20, 2018.

---

[6]    The prison was staffed as follows: (1) shift commander – Lt. Dailey, (2) population sergeant – Sgt. Pace, (3) segregation sergeant – Sgt. Moore, (4) shift clerk - Denman, (5) Rover for Dorms A&B - Boudreaux, (6) Rover for Dorms C&D - Salter, (7) Rover for Dorm E – Raines, (8) Infirmary Rover – CO Dailey, (9) perimeter 848 - Siler, (10) perimeter 849 – CO Young, (11) Tower 1 - Pickett, (12) Tower 2 - Drane, (13) Cubicle 1 - Bennett, (14) Cubicle 2 - CCO Pickett, (15) Cubicle 3 – CCO Harris, (16) Cubicle 4 – CCO Richardson, (17) Cubicle 5 - Lee, (18) Segregation Rover - Jones, (19) Segregation Rover- Thompkins, (20) Death Row Rover - Hard, (21) Other – CO Quarles, (22) Other – Lt. McKenzie

For these reasons, Plaintiff has failed to establish an Eighth Amendment violation, and Defendants are entitled to qualified immunity.  Thus, it is recommended that summary judgment be **GRANTED** in favor of Defendants Dunn and Stewart.

### D.    CONCLUSION.

Based on the foregoing, the undersigned recommends that summary judgment should be **GRANTED** in favor of Defendants Dunn and Stewart and that this action should be **DISMISSED**.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 24th day of March, 2021.


s/ P. Bradley Murray
UNITED STATES MAGISTRATE JUDGE